# HARRY BURTON v. STATE.

No. A-9180.   July 9, 1937.

(70 Pac. 2d 480.)

R. Allen Dixon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Holly L. Anderson, Co. Atty., for the State.

BAREFOOT, J.   The defendant in this case was charged with the crime of receiving stolen property in Tulsa county, was convicted and sentenced to serve a term of two years in the penitentiary.

The record reveals that the home of R. W. Gamble was entered during the month of December, 1935, and there were taken therefrom a three-piece blue suit, valued at $15, two shirts, and a Parker pen and pencil set.   A short time later one of these shirts appeared in a bundle of laundry at the laundry where Mrs. Gamble worked.   She informed the officers and they procured a search warrant to search the premises from where the laundry came, 410 East Brady street, Tulsa, Okla.   The officers found there the three-piece suit and the Parker pen and pencil which had been taken from the Gamble home, and other property consisting of a dark suit of clothes which had been

previously stolen from a hotel room of a man by the name of Lynn Gold. The party living at 410 East Brady street was named Ethel Adams. Two of the defendant's sons were living at this address, one of them was named Harry Burton, Jr. The defendant himself lived at 1128 North Greenwood street, Tulsa, Okla. The defendant paid Ethel Adams to board and keep his two sons. Ethel Adams testified at the preliminary hearing of the defendant, saying that she purchased the above-described property from a white man by the name of Murray, and the record showed that this party had been convicted and was serving a 60-day jail sentence for the larceny of the property with which the defendant was charged with receiving. This conviction was based upon the testimony of Ethel Adams and by reason thereof Murray pleaded guilty to the larceny of the said property.

The defendant testified that he had agreed to buy the three-piece suit from Ethel Adams if it would fit him. He was to pay the sum of $3 therefor. He sent the pair of pants to this suit to the tailor for the purpose of having the same altered. He testified that he had no knowledge that the property was stolen at any time. The officers who made the search were the only ones testifying for the state with direct reference to any receipt of the property by the defendant. They testified only to the finding of the property and statements claimed to have been made by the defendant at the time of the search, which the defendant denied. The evidence was somewhat conflicting as to whether the defendant himself lived at 410 East Brady street. One of the colored officers swore that the defendant told him he lived there. This was on rebuttal. The most reliable evidence is that the defendant did not live there himself, but lived at 1128 North Greenwood street. The evidence further showed that the de-

fendant had been convicted several times prior to this trial, and had served a term in the penitentiary.

It is contended by defendant that the court erred in overruling the motion for continuance filed in this case and the court's refusal to permit the defendant to have read to the jury, by the court reporter, the testimony of the witness Ethel Adams. Under the circumstances surrounding this case, we are inclined to believe this contention is well taken. The record in this case reveals that the defendant's preliminary trial was had on the 9th day of January, 1936. Counsel who defended him was appointed on that date and his case was set for trial on January 22, 1936. He remained in jail until two days before his case was tried, which was on the 29th day of January, 1936, by reason of the congested docket of the court. The witness Ethel Adams had been to see him while he was in jail, and had promised to testify in his behalf at his trial. He became suspicious of her and took the precaution to have a subpoena issued several days before his trial. When she did not appear in court on the 23d day of January, he had the court issue a bench warrant for her arrest and the same was placed in the hands of the officers. The record is silent as to any effort on their part to locate her and have her present to testify on the date of the trial. This, although she was living in Tulsa county, and the record discloses, made her appearance the day after the case was tried.

In addition to the presenting of the motion for continuance which was overruled by the court, the defendant had issued a subpoena for the court reporter who took the testimony of the witness Ethel Adams at the preliminary hearing and the record shows the following proceedings:

"Mr. Dixon: * * * Now, if the court please, we have subpoenaed the Reporter of the preliminary hearing, and

would like to have the testimony that was introduced at the preliminary trial read into this record; we would like to have a little recess to make that available. The Court: Have you subpoenaed her? Mr. Dixon: Subpoenaed her since noon, forthwith. The Court: I guess she will come. Mr. Dixon: I think she was reporting another case over there when the deputy went over. The Court: Can't you use somebody else? Mr. Long: I think that is about all the testimony we will want to offer. Mr. Dixon: We would like to have that; it is very, very material. The Court: Oh, yes, of course you can have it;—oh, yes, you can have it. Haven't you got any other testimony? Mr. Dixon: Practically none."

When court reconvened, the following proceedings were had:

"Mr. Long: Dixie, this clerk won't come over here; you heard the preliminary, didn't you? Mr. Gilmer: No, sir, I didn't try it. Mr. Long: We have set out in that affidavit what she testified to over there; will you permit us to introduce the affidavit? Mr. Gilmer: Let me see the affidavit. After reading the affidavit I won't agree to it because I don't know the facts set out in the affidavit. Mr. Long: Will you agree she would testify to it? Mr. Gilmer: I will see Mr. Conway, who tried the preliminary, if he remembers. We will agree to anything we think she testified to. If your Honor will give me a minute or two I will go down and see Mr. Conway. The Court: Can you stipulate then what you could agree on? Mr. Gilmer: If I can talk to Mr. Conway just one minute, down in the office. The Court: All right, hurry back. Mr. Gilmer: I will be back in just one moment, Judge."

Upon the return of the county attorney, this evidence was not admitted, but the county attorney was permitted to reopen the case and put on an additional witness, who was present at the time of the search.

It will thus be noted the defendant was forced to finish his trial in this case without having the benefit of

the testimony of Ethel Adams, who it is admitted received the identical stolen property which the defendant is charged with receiving, and upon whose testimony the party who committed the larceny was convicted.

We have carefully reviewed this record and are of the opinion that the defendant was entitled to have this evidence. The evidence in this case against the defendant was very close. It is very doubtful if it was sufficient to convict the defendant of receiving stolen property. The evidence which he desired was not cumulative, but it was the only evidence defendant had to corroborate his own evidence. If the county attorney had permitted the reading of the testimony of Ethel Adams, taken at the preliminary hearing, it would have cured any error in the overruling of the motion for continuance, but, as stated above, we think in a case where the evidence was as close as it was here, the defendant was entitled to have the testimony of this witness. No doubt the previous record of this defendant went strongly against him with the jury in the consideration of this case, and for this reason he was entitled to have the benefit of the evidence of the witness Ethel Adams.

Other assignments of error are urged, but it is useless to consider them in view of the position we have taken in this case. It is therefore ordered that the judgment of the district court of Tulsa county be reversed.

DAVENPORT, P. J., and DOYLE, J., concur.